and we'll hear counsel and Harmon against Bogart. This is an Erie County afternoon. Good afternoon, Your Honors, and may it please the Court. I represent Jim Harmon. He's a 20-year trial lawyer for Erie County, spent most of his career until these cases started, trying child abuse cases. I'm here and we're here because I made a mistake, and that mistake unquestionably is the cloud hanging over this case. But I want to focus on, just briefly, the good cause argument, which I know is a tougher argument. I cited the case from Judge Ellis in the Rackett-Dackett, the Richardson case, because he dealt with a similar issue. When the law changed the time frame from 120 to 90 days, lawyers better than I made the same mistake. And he said you should look beyond that mistake, look at more factors. Just don't let that take over the whole good cause analysis. That's really the focus of the appeal on the good cause argument. I'd like to focus my attention on the second part, where I do think there was an abuse of discretion based on the standard. I know, Judge Cabranes, you were involved in a panel that just issued a decision in a case called Payjack about a month ago, where there was a second chance given by Judge Geraci. There was one extension and then they flubbed the extension. And like most of the cases that you read, and I apologize to you to have to read all these things, because I know you've dealt with this issue and it's got to be frustrating to judges to see that attorneys just miss things like this. But in all those cases, there was never such a short delay. And so I do think this case is outside the range of permissible decisions in that respect, even with respect to the decisions that Judge Scretany had made. But I do think the real problem was that the judge took an erroneous view of the law when he looked at the factors in terms of his discretion. And somehow, when you read the decision, every factor got turned against Mr. Harmon. For instance, the judge says the county concedes that they had notice, but that he doesn't say that that factor is in our favor. He notes correctly the law, that when the statute of limitations is going to expire, now really a dismissal without prejudice becomes a dismissal with prejudice. And he cites the Zapata case where the court says, you know, we should probably take a closer look at that. They don't go as far as the Fifth Circuit that says there's a heightened standard, but it's in there and it's in most of the district court cases. But the judge says, I'm not willing to give you that factor. I've never – I didn't see any other case where that happened. The third factor is really a non-factor because everything happened so quickly. They didn't conceal the defect. In fact, it had been served before the judge even sent out an order saying you better serve this. The fourth factor is prejudice to the defendant. And the judge cited some cases saying, well, of course, if you have to defend something because the statute of limitations runs, that's a prejudice. But there was no other prejudice cited. And under the case law, that's minimal. And so I believe we've shown an abuse of discretion based on that. I would like to address one other thing. It was an unusual thing. And I volunteered it because I was trying to figure out what happened here. There was another case where I moved for an extension to serve. It involved the Seneca Nation of Indians. We tried to serve and my process server was thrown out unceremoniously and told never to come back. So I moved after we had tried after a month to serve for an extension. And in my papers, I said, you know, we've got 120 days to serve. This was earlier in 2017. And about three months later, the case, there was some delay because the case transferred from one judge to another. But Judge Scratton, he said, okay, I'll give you an extension. I'm not going to let you serve by publication. But by the way, at the bottom of the text order, it's 90 days, not 120 days. I didn't see it. If I saw it, then I probably should have gone to the doc. I didn't see it because I think I saw it late January or early February and said, oh, my God, I've got to serve this thing. So that's how that happened. If I had seen it, then shame on me because I certainly would have served it that time. This seems a lot more of a harsh result in isolation. But didn't the judge below note that you had an ongoing civil action in New York Supreme Court arising out of some of the same conduct and that you would have that ability to seek relief in that forum? And so you weren't going to be completely, your client wasn't going to be completely without a remedy. Well, he did cite a case that said that, and he did say that. But that case was removed to Federal court, and it's actually in front of Judge Scratton. So that case, the timing on that case, that was a defamation case in State court. It had to be brought within one year of the action, and it was. The second case could not be brought until we went through the administrative process. We had to go to the New York State Division of Human Rights and then wait for the EEOC. So that was the case. But you could have amended your pleadings in that other case and added this claim? Well, but I had a 90-day statute of limitations. If I had waited to move to amend the complaint and then wait to a decision on that, I could have made that judgment, but I didn't expect that I was going to not serve the complaint. What happened was, and this is a problem when you represent people who are still working for an employer. What happened was that we had the first case pending, and a month after we filed this lawsuit, we had a mediation. And I didn't think it was right. Obviously, in hindsight, I should have just served it. But I didn't think it was right to serve this complaint at that time because we had the mediation in the first case. And we were hoping to resolve the case because my client was still working there and he wanted to keep working there. And then in December, he was abruptly transferred out of where he had worked for 20 years doing these child abuse cases to child support. And there was a row with his supervisor, not between him but between Ms. Bogart and the intermediate supervisor. So there was a decision made to hold off. I cited the holidays. I don't think that's a good cause, and I agree. I just cited that because it was the holidays. That's what happened. But the fact of the matter is, in the end, it's 15 days. And actually, Judge Scratton, he says it's 10 days because he said I still had nine days from when he sent that note in the other case. So there's no case I could find where there was such a harsh result for, you know, a minor penalty, maybe a double minor. It shouldn't be a game misconduct like in hockey. That's my argument anyway. Thank you. Good afternoon. May it please the Court. I am Anna Vanko. I'm appearing on behalf of the appellees, the County of Erie and Marnie Bogart. It is well established that where good cause is lacking, as the district court found in the lower case, this court will not disturb a district court's decision to dismiss a complaint so long as there are sufficient indications on the record that the district court weighed the impact that a dismissal or an extension would have on the parties. And I cite the well-known Zapata v. City of New York case at 197. The district court below actually engaged in this analysis. It considered a variety of factors that have been set out in the framework that this court, the Second Circuit, has adopted and has utilized for over a decade. Plaintiff's counsel would cite and has cited two Fifth Circuit case, Eastern District of Virginia, all in what I would consider a last-ditch attempt to have this court change its standard. And there's really no reason to do so. The standard has worked well in this district, in this circuit, and the standard of overturning such a decision by the district court is abusive discretion, which is plaintiff's burden, not my burden. A delay in service resulting from neglect, mistake, or, as here, a miscalculation of the time periods, does not constitute good cause. We all agree on that, and plaintiff's counsel agrees on that. But the court didn't end its discussion there. If it had, it might have been abusive discretion, but it didn't. It went much further, and it weighed the impact that a dismissal or extension would have on the parties. So when it looked at those factors, it looked at all of the reasons that plaintiffs cited, each of them. I was in the mediation. It was the holidays. I really didn't want to exacerbate the situation at work. He looked at them and said simply, these are all within plaintiff's control, all within plaintiff's control. He could have made a different decision. And when things are within plaintiff's control and you make no action, then he's going to weigh in favor of not finding good cause. It's well established that good cause is evidenced only in exceptional circumstances, where the insufficiency of service results from circumstances beyond plaintiff's control. And I cite the Feingold case in that regard. In weighing the prejudice that one has in looking at these factors, they do look, and the court did look, at the statute of limitations bar. He recognized there was a bar. The statute of limitations had expired even before service had been made. But he evaluated that and said, but not all is lost. Not all is lost because there's this other action pending arising out of the exact same incident, the February 2016 incident. And that incident, as plaintiff counsel has indicated, resulted in his filing in state court, not only a defamation action, but intentional infliction of emotional distress and several constitutional violations. We removed that to federal court, which is why it's pending. The court knew fully well of that other case. And utilizing the Marison case, it said he has another remedy. And that other remedy is being able to have other claims to pursue. And that is, in fact, a major consideration as compared to the prejudice on the defendants. The prejudice would be significant in that the defendants would have to defend against a case that was time-barred and doesn't even get into the issue of whether or not there was good service affected in any event. So they also, the court also looked at the other factors. And in weighing the prejudices that both sides could or would suffer, the weighing is a proper factor to find, based on the McMillan case, that where the defendant ‑‑ I'm sorry, where the plaintiff has failed to take any action to ask for an extension of time or take any other action within the time period, that that would be weighing more in the favor of the defendants. In absence of cause, no weighing of the prejudices between the two parties can ignore that the situation is the result from plaintiff's neglect in the first place, again, citing the Zapata case. So we do believe that the court did make proper decisions, but the real analysis is whether or not this court can go in and second-guess those decisions when the court has laid a record as to what it was thinking, what it considered, and all the other factors that would ‑‑ Are you suggesting that what Zapata says is that so long as the district court recites all the appropriate factors, it doesn't matter how outrageously the judge might have ‑‑ No, I'm not saying ‑‑ No, it's an abuse of discretion standard. It's an abuse of discretion. In the usual way. Right. It is, absolutely. But it has said that in the absence of ‑‑ Well, but in Zapata, there was also an argument that the district court was not aware of its discretion and had procedurally erred. And what the court ‑‑ what our court said was there's no procedural error so long as the court has weighed the ‑‑ it was aware of its discretion and weighed the factors that it decided. Right. But theoretically at least, there could be such a thing as a decision that's outside the bounds of reasonable decisions. And you're saying this is not one of them. Yes. I am saying this is not one of them. Correct, Your Honor. Thanks very much, Ms. Emanuel. Thank you. Justice Breyer. Briefly, Your Honors, I said the Richardson case before I met Robinson. I misquoted. That was Judge Ellis's decision. But ‑‑ and it brings to mind what the problem was with ‑‑ the error that I made deludes one into a false sense of security because you have it on the calendar and then you don't think of it. And that's what Judge Robinson or Judge Ellis recognized in the Robinson case. And that's why there was no motion to ask to extend service because I thought ‑‑ You didn't know you needed the next one. Right. So once it came in, we acted in good faith, admitted the mistake. But I did want to come back to the second case because I don't think I fully answered your question, Judge Rice. That second case, or the first case actually, is based on one incident where he was perp walked out of the building, a man who had been there 20 years in front of everybody else. And that's really what that focuses on. This case is a completely different standard of proof than everything else. This is about a concerted effort by the county and Ms. Bogart to remove the older lawyers, including Mr. Harmon. He's not the only one. So it's a completely different case. Now, if I lose this appeal, do I go back now and file a motion to amend that complaint? I mean, it seems like a waste of time considering where this case was procedurally. It was within days when this thing happened. There's never been any real prejudice articulated by the defendant other than they have to answer the case. And all the case law says that's not enough. Thanks for your time. Thank you. We reserve decision.